[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 27, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 04-10829
Non-Argument Calendar

_____

D. C. Docket No. 02-00706-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN F. THOMPSON, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 27, 2005)**

Before EDMONDSON, Chief Judge, ANDERSON and PRYOR Circuit Judges.

PER CURIAM:

John F. Thompson, III, appeals his convictions and sentences for conspiracy to commit mail fraud, 18 U.S.C. §§ 371, 2; mail fraud, 18 U.S.C. §§ 1341, 2; and money laundering, 18 U.S.C. §§ 1957, 2. Thompson, who owned timber supply businesses in Georgia, was charged with conspiring to defraud saw mill companies by using false timber scale tickets to sell phantom timber loads. No reversible error has been shown; we affirm.

Thompson first challenges the district court's imposition of a two-level enhancement for obstruction of justice, U.S.S.G. § 3C1.1. He asserts that he should not be punished solely for testifying in his defense at trial. And Thompson maintains that the district court failed to address the elements of perjury with sufficient specificity, citing United States v. Dunnigan, 113 S.Ct. 1111 (1993). Thompson further contends that he did not obstruct justice willfully: testimony showed that he cooperated with government agents and that he merely was confused by the government's questions during his testimony.

When a district court imposes an enhancement for obstruction of justice, we review the district court's factual findings for clear error and its application of the sentencing guidelines to those facts de novo. United States v. Uscinski, 369 F.3d 1243, 1246 (11th Cir. 2004). Although it is preferable for a district court to

make specific findings of fact when applying U.S.S.G. § 3C1.1, a remand is unnecessary "if the record clearly reflects the basis for enhancement." Id.

The Guidelines authorize a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The enhancement applies to the commission of perjury. U.S.S.G. § 3C1.1, comment. (n.4(b)).

The district court enhanced Thompson's sentence based on the court's belief that Thompson gave perjured testimony. The court pointed to Thompson's testimony that he thought that L.B. Howard, a purported logger who sold legitimate loads of timber to Thompson, was a real person. The court determined that it could not "square" Thompson's testimony with the other evidence at trial and with the jury's guilty verdict on the fraud counts.

The district court committed no error in imposing an obstruction enhancement. Thompson testified that he did not engage in a conspiracy with Annie Bailey, a timber scale house worker, to defraud Procter & Gamble and then Weyerhaeuser, who successively owned the timber mill in Barnesville, Georgia, to which Thompson sold the phantom timber loads. But Bailey testified that she

3

agreed with Thompson to produce false timber tickets in 1988, that Thompson provided her with the necessary material and information to produce the false tickets, and that Thompson paid her in cash and by check for the phantom timber loads. The record is sufficient to support the district court's determination and to support an obstruction enhancement based on perjury. See Dunnigan, 113 S.Ct. at 1116 (stating that a witness commits perjury within the meaning of § 3C1.1 when he testifies falsely about a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory). And Thompson failed to request more specific findings on his perjurious statements: "[h]aving failed to do so, [he] cannot now complain to this court." United States v. Hubert, 138 F.3d 912, 915 (11th Cir. 1998).[1]

Thompson argues second that the district court improperly excluded proffered defense testimony from Stanley Wheelous, a senior open-market timber buyer for MeadWestvaco ("Mead"), about the timber industry's custom of mixing timber loads on "special price contracts."[2] Thompson contends that the

---

[1] Citing United States v. Banks, 347 F.3d 1266 (11th Cir. 2004), Thompson also contends that the government did not show how his statements to government agents during the investigation were a significant hindrance to the investigation. But the district court based the enhancement on its determination that Thompson's trial testimony was perjured. Thompson's reliance on Banks thus is misplaced.

[2] The government presented testimony (1) that Weyerhaeuser paid Thompson for special price contracts that required the timber to come from a specific tract of land, and (2) that Thompson

government introduced evidence suggesting he fraudulently violated the special price contracts; the district court should have allowed him to present about the industry custom to show that his conduct was legitimate.

We review a district court's evidentiary rulings for a clear abuse of discretion. United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002), cert. denied, 123 S.Ct. 1484 (2003). Federal Rule of Evidence 701 allows a lay person to testify about opinions or inferences that "are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701.[3] Under this version of Rule 701, lay opinion testimony witnesses may testify "based upon their particularized knowledge garnered from years of experience within the field." Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003).

Wheelous had over 30 years' experience in the timber field, and he had been a buyer for Mead for 15 years. But Thompson asked Wheelous only about Mead's

---

violated these contracts by selling loads of timber from mixed tracts of land.

[3] We need not address the government's argument that Wheelous was not qualified as an expert witness, under Fed.R.Evid. 702: Thompson concedes that Wheelous was not being introduced as an expert witness.

tract trade policies. Thompson did not establish that Wheelous had particularized knowledge of the special price contract practices of other timber companies, including Procter & Gamble and Weyerhaeuser, the companies that operated the Barnesville mill. The district court did not abuse its discretion in excluding Wheelous's testimony.

AFFIRMED.